BRADY, ADM'R, v. THE BURLINGTON, CEDAR RAPIDS & NORTH-
ERN R'Y CO.

1. **Railroads:** KILLING OF BRAKEMAN: BRAKES NOT SUFFICIENTLY SET: NEGLIGENCE OF CONDUCTOR: EVIDENCE. A freight train, while standing at a station where the track was not level, started down the track and collided with some detached cars, killing a brakeman who was there engaged in the discharge of his duty. When the train so started the conductor was in the station house engaged in his proper business there. He had not himself set the brakes which had stopped the train, and had no reason to suspect that they were not sufficiently set to hold the train where it had been stopped. After discovering that the train had started, there was not sufficient time for him to stop it before the collision occurred. *Held* that the evidence of these facts did not tend to show any negligence on the part of the conductor, and that an instruction based on a contrary theory was erroneous.

*Appeal from Buchanan District Court.*

FRIDAY, JUNE 17.

ACTION to recover for a personal injury alleged to have been sustained by the plaintiff's intestate. There was a trial to a jury, and verdict and judgment were rendered for the plaintiff for $10,000. The defendant appeals.

*S. K. Tracy* and *C. E. Ransier*, for appellant.

*McCeney & O'Donnell* and *H. Boies*, for appellee.

ADAMS, CH. J.—The plaintiff's intestate, Philip Brady, was employed as a brakeman upon a freight train on the defendant's road. While so employed he was killed. He was at the time of the accident between two cars on a side track, near the switch, and near the main track. The accident was caused by a collision between the cars on the main track and those on the side track, between which Brady had placed himself to make an uncoupling. The train, that day, had come in from the north, and stopped at the station, which is called Ely. It consisted of about sixteen freight cars and a caboose. After the train had stopped, the conductor was informed that there was a car of wheat on the side track to put into the train. Brady and another brakeman undertook to do the necessary switching. They cut the train, and proceeded southward to a point south of the switch, and backed northward on the side track, and took therefrom two cars and this car of wheat, which they had placed on the main track, and then proceeded southward for the purpose of leaving on the side track the two cars taken therefrom, but which were not to be put into the train. When they had backed a short distance upon the side track, but not far enough to be free from a collision with cars on the main track, the main train moved southward, and collided with the cars on the side track, and caused the accident. The cause of the movement of the main train was the descent in the grade at that place; the brakes not having been set sufficiently to hold the train.

The plaintiff averred, in her petition, that the collision was

occasioned by the want of care and negligence of the conductor, who should have set sufficient brakes on said main train to effectually stop it, and should have kept personal supervision thereof, and not abandoned the same and allowed it to move on said incline; that said conductor neglected to do this, and only set one brake on the caboose, and left and abandoned the train, and allowed it to run down said inclined grade, producing such collision. The court, in the twelfth paragraph of its charge, instructed the jury upon the theory that it was the decedent Brady's duty to use proper care in setting the brakes to stop the train, but that there was evidence tending to show that, at the time the train moved down the grade, the conductor was in close proximity to the train, and might, with the exercise of reasonable and ordinary care, have seen the movement of the train, and stopped it after it started. The defendant insists that the court erred in giving this instruction. Its position is that there was no evidence upon which it could be based, so far as the conductor was concerned.

The evidence, as it is set out in the abstract, is very brief. The undisputed fact is that, at the time the train started, the conductor had stepped into the station to get orders from the train dispatcher, and some bills; that while he was in the station, standing with his back towards the train, it began to move; that the operator saw the movement and informed him, and that he stepped out at once, but did not arrest the train, and the collision occurred. The testimony of the operator, upon this point, is in these words: "It would not take the conductor over two or three minutes to do what business he had to do in the depot. He took about the usual and ordinary time to do this business. About ten seconds elapsed, after I discovered the cars moving, before the collision happened. There was hardly time to get on top of the car. It was almost instantaneous." The conductor's testimony is in these words: "The operator said that the train was moving. I then immediately opened the door of the

station-house, and stepped out. Just as I stepped out the cars struck." This is all the evidence as to the time which elapsed between the time when the conductor was informed that the cars had started and the time when the collision occurred. In our opinion it entirely fails to show that the conductor had time to stop the train.

We do not, indeed, understand the plaintiff's counsel as seriously contending that he had time to stop the train after he was informed that it had started. Their position is that he failed to watch the train as he should have done. They do not deny that he had business in the station, and might properly enough have relied upon the train remaining stationary where it had been stopped by the brakes until he could finish his business. But they insist that he could not properly rely upon it longer, and that the evidence shows that he did not return to his watch immediately upon finishing his business. The most that the evidence shows upon this point is that the conductor, while in the station, allowed his attention to be diverted for a moment by a commercial man who had no business with him. Now, while the evidence does not show that he could have stopped the train if he had started towards it a moment sooner than he did, we do not think that, if it should be conceded that he could, we could say that the jury was justified in finding negligence.

The evidence shows that the incline was slight, and we see nothing to justify the inference that, if the brakes had been properly set, the train would have started. It seems certain that the brakes were not properly set. But the evidence does not show that the conductor knew it, or that there was anything in the circumstances which would have caused him to apprehend it. If he had set the brakes himself, the case would be different; but the evidence does not show that he did. As to who set them there is no evidence. It would seem proper to assume that the brakemen should have set them. The court charged upon the theory that it was Brady's duty to set the brakes. Now, in the absence of any

evidence tending to show that the conductor knew, or had reason to apprehend, that Brady had not properly performed his duty, we do not think that we could say that the conductor owed him the duty of watching for the starting of the train of its own motion.

There was another theory as to the movement of the train, and that is that the whole train did not move, but that there was only such movement as resulted from the letting out of the slack. But that theory was contrary to the testimony of the plaintiff's witnesses, and was precluded by the special finding of the jury, and we have not thought it necessary to discuss it, or any of the questions growing out of it.

We think that there was no evidence that the conductor was negligent in failing to watch the train, or in failing to stop it after its movement became known to him, and that there was error in the twelfth instruction in assuming that there was such evidence.

REVERSED.